UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| D.F. PRAY, INC., | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 14-cv-14319-IT |
| | * |
| EDISON PLAZA OP LLC, | * |
| MILBOOK PROPERTIES LTD, and | * |
| PEOPLE'S UNITED BANK, | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

August 3, 2015

TALWANI, D.J.

I.  Introduction

Plaintiff D.F. Pray, Inc. ("Pray") filed this action against Defendants Edison Plaza OP LLC ("Edison") and Milbrook Properties Ltd. ("Milbrook") alleging (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) violation of Massachusetts General Laws chapter 93A §§ 2, 11.  Millbrook and Edison move to dismiss the amended complaint on three grounds, including lack of personal jurisdiction.  Because the court finds that it lacks personal jurisdiction over Edison and Milbrook as to Pray's claims, it hereby ALLOWS Edison and Milbrook's Motion to Dismiss Amended Complaint [#24].

II.  Facts Relating to Personal Jurisdiction

Pray alleges the following facts in its Verified Amended Complaint.[1]  Pray has a

---

[1] Because the court is considering this motion to dismiss without first holding an evidentiary hearing, this court will "consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."  Boit v.

principle place of business in Massachusetts and is incorporated in Rhode Island. Edison has a principle place of business in New York and is organized under the laws of New Jersey. Milbrook is incorporated and has a principle place of business in New York.

Edison and Milbrook[2] own and manage a retail development (the "Property") in Edison, New Jersey. By phone and e-mail, Edison and Milbrook negotiated with Pray for a contract to develop infrastructure and landscaping on the Property. On January 17, 2013, Edison and Milbrook requested that Pray submit a bid to develop the Property, and Pray, in its Massachusetts office, prepared a budget for the project that Pray submitted to them.

Edison and Milbrook sent a proposed Standard Form of Agreement Between Owner and Contractor for the Project (the "Contract") via e-mail to Pray in Massachusetts. Pray revised and signed the Contract and returned it either by e-mail or regular mail. Among other things, the Contract provided that Pray would substantially complete work on the Property in 112 days and that Edison and Milbrook would pay $623,642.14, including provisions for smaller payments as progress was made on the project. Pray began work on April 1, 2014, and, throughout that time, exchanged e-mails with Edison and Milbrook while in its Massachusetts office.

From Massachusetts, Pray prepared and sent seven applications for payment to Edison and Milbrook via e-mail or mail, and Edison and Milbrook responded to two of the applications by mailing checks to Pray for $11,280.14 and $71,746.52. Pray alleges that it finished the project on October 30, 2014 but had incurred additional costs that the Contract provided that

---

Gar-Tec Prod., Inc., 967 F.2d 671, 675 (1st Cir. 1992). Here, Pray submits a verified complaint and attached exhibits as evidence of the jurisdictional facts alleged.

[2] Pray alleges that Milbrook owns Edison, but Milbrook and Edison deny this fact. The question of whether Milbrook owns Edison does not affect the court's analysis here because neither company has sufficient minimum contacts in Massachusetts to establish personal jurisdiction.

Edison and Milbrook would reimburse.  After another request for payment, Edison and Milbrook mailed a check for $329,501.33 to Pray in Massachusetts.  Pray claims that Edison and Milbrook still owe $211,114.15 from the original Contract plus $44,002.98 in extra expenses incurred.  Pray does not allege that any representatives from Edison or Milbrook traveled to Massachusetts during the negotiations or performance of the contract.

III.    Discussion

    *A.    Personal Jurisdiction*

"An exercise of jurisdiction must be authorized by state statute and must comply with the Constitution."  Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005).  "The court may exercise two types of personal jurisdiction—general or specific."  Bridge St. Auto., Inc. v. Green Valley Oil, LLC, 985 F. Supp. 2d 96, 109 (D. Mass. 2013).  Pray argues that specific jurisdiction exists under Massachusetts General Laws chapter 223A, ¶ 3—the Massachusetts long-arm statute—and the Constitution.  This court "sidestep[s] the statutory inquiry and proceed[s] directly to the constitutional analysis . . . because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'"  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002) (quoting "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 280 N.E.2d 423, 424 (Mass. 1972)).

Due process requires that Edison and Milbrook have "minimum contacts" with the forum state such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  "The First Circuit employs a tripartite analysis to determine whether specific jurisdiction is appropriate: (1) whether the claims arise out of or are related to the defendant's in-

state activities, (2) whether the defendant has purposefully availed itself of the laws of the forum state and (3) whether the exercise of jurisdiction is reasonable under the circumstances." <u>Pesmel N. Am., LLC v. Caraustar Indus., Inc.</u>, 754 F. Supp. 2d 168, 172 (D. Mass. 2010) (citing <u>Platten v. HB Bermuda Exempted Ltd.</u>, 437 F.3d 118, 135 (1st Cir. 2006)).  While "[q]uestions of specific jurisdiction are always tied to the particular claims asserted," <u>Phillips Exeter Acad. v. Howard Phillips Fund, Inc.</u>, 196 F.3d 284, 289 (1st Cir. 1999), here, each of Pray's claims are predicated on its breach of contract claim.

### (1) Relatedness

In <u>Harlow</u>, the First Circuit explained that the relatedness prong "requires a showing of a material connection," and that "the defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case."  432 F.3d at 61 (alteration in original) (internal quotation marks omitted).  "In contract cases, a court charged with determining the existence *vel non* of personal jurisdiction must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." <u>Phillips Exeter Acad</u>, 196 F.3d at 289.  Edison and Milbrook's calls and e-mails directed into Massachusetts, as a part of a negotiation, were instrumental to the Contract's formation.  Likewise, the e-mails and calls exchanged throughout the project, the payment applications mailed from Pray in Massachusetts and payments mailed to Pray in Massachusetts, and the Contract-related tasks performed by Pray in Massachusetts were instrumental in the formation, performance, and alleged breach of the Contract.  These contacts, therefore, constitute a "material connection" that satisfies the relatedness prong of the due process analysis.  See <u>Harlow</u>, 432 F.3d at 61.

(2) Purposeful Availment

The purposeful availment prong pertains to a defendant's intentionality and is "only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623–24 (1st Cir. 2001). "The purposeful availment prong 'represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior.'" C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 66 (1st Cir. 2014) (quoting Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011). The two cornerstones of purposeful availment are foreseeability and voluntariness. Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994). "Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself*.'" Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). "Foreseeability requires that the contacts also must be of a nature that the defendant could 'reasonably anticipate being haled into court there.'" Id. (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980))

"A contract, by itself, cannot automatically establish minimum contacts." Swiss Am. Bank, Ltd., 274 F.3d at 621 (citing Burger King, 471 U.S. at 479). The First Circuit uses a "contract-plus" analysis of a relationship created by a contract to determine if a defendant has purposefully availed itself of a forum-state. See id. (noting that Burger King developed a "contract-plus" analysis). In the context of a contract, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of

dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." Burger King, 471 U.S. at 479.

In Phillips, the First Circuit held that a plaintiff could establish voluntariness but not foreseeability when the out-of-state defendant had e-mailed the plaintiff, a Massachusetts resident, to request an interview after seeing his resume on an employment website. 530 F.3d at 28. The Phillips defendant subsequently interviewed the plaintiff in Illinois and mailed an employment contract to him in Massachusetts, which he signed and returned. Id. at 25. The First Circuit noted that "the defendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant." Id. at 28. Despite the defendant's email to the plaintiff inviting him to interview for the job, the court found that the defendant's awareness that it was entering into a contract with a Massachusetts resident was insufficient to establish that it was reasonably foreseeable that the defendant could be haled to court in Massachusetts. Id. at 29.

Here, Edison and Millbrook's request for Pray's bid for the Project in New Jersey, much like the e-mail from the Phillips defendant, demonstrates voluntariness but not foreseeability. See id. The "contemplated future consequences," "terms of the contract," and "the parties' actual course of dealing" point to the contracted work on the Project in New Jersey. See Burger King, 471 U.S. at 479. The Contract and the request for Pray's bid, therefore, are not sufficient contacts with Massachusetts to demonstrate purposeful availment. See Phillips, F.3d at 28; cf. Burger King, 471 U.S. at 479 (finding a contract that contemplated a twenty-year franchise relationship, including "exacting regulation" of defendant's franchise from the forum-state plaintiff, to be sufficient to establish purposeful availment of the laws of the forum state).

Pray argues that the Contract with Edison and Milbrook is similar to the contract that

satisfied due process in Hahn v. Vermont Law School, 698 F.2d 48 (1st Cir. 1983).  In that case, the forum-based contacts of Vermont Law School ("VLS") included sending and receiving an application, making an offer of admittance, and receiving an acceptance and deposit, all by mail to and from the forum state of Massachusetts.  Id. at 50.  In Hahn, however, the determinant factor that demonstrated purposeful availment was that VLS had been recruiting Massachusetts residents, who comprised ten percent of its student body.  Id. at 52.  The court found that VLS's forum-based contacts were not "simply isolated occurrences" but part of "efforts to serve the market for legal education in Massachusetts."  Id.

In the present case, Pray proffers evidence that the bid was prepared in Massachusetts as a part of the Contract negotiation and that Pray prepared payment applications in Massachusetts.  This does not establish that Edison and Milbrook have acted with a larger purpose to serve a market in Massachusetts, and the Contract does not exhibit an attempt to create a long-lasting relationship with the forum state.  For these reasons, and after considering Edison and Milbrook's alleged forum-state contacts, the court finds that Pray has not met the "contract plus" standard for purposeful availment.  Cf. Int'l Bus. Mach. Corp. v. Merlin Technical Solutions, Inc., No. 06-40174-FDS, 2007 WL 335258, at *6 (D. Mass. Feb. 1, 2007) (finding that such a standard was met where the contract "contemplated an ongoing, continuous relationship between [the defendant and the Massachusetts-based company]").

Accordingly, Pray has failed to establish purposeful availment for the forum-based contacts related to its causes of actions.  This court, therefore, need not inquire whether the exercise of jurisdiction is reasonable under the circumstances because it cannot exercise specific jurisdiction for Pray's claims.


IV.     Conclusion

For the foregoing reasons, Edison and Milbrook's Motion to Dismiss Amended Complaint [#24] is ALLOWED.

IT IS SO ORDERED.

Date: August 3, 2015                                  /s/ Indira Talwani
                                                      United States District Judge